O’Neall, J.
We agree with the Chancellor, that there were no words used in the clause of the will under consideration, which would restrict the general words “ all the rest of my property that is not above mentioned,” to property of the kinds specifically enumerated.
The money, the subject of this suit, was found on hand at the testator’s death, and was probably acquired after the execution of his will. The words of the will in the case of Cambridge v. Rous, 8 Ves. 12, are very like the words of the will before us — “I then give and bequeath all the rest and residue of my property and effects, whether in money or in the public funds, or other securities of any sort or kind whatever, to be equally divided.” A specific legacy, consisting of plate, diamonds, jewels, household furniture, linen, wearing apparel and old gold coins, lapsed by the death of the legatee, in the lifetime of the testatrix; the question was, whether the lapsed legacy fell into the residue and passed under the residuary clause. It was held that it did. The Master of the Rolls, Sir William Grant, remarking on the words, says, there “ the words, ‘ whether in money or in public funds, 'or other securities of any sort or kind, whatsoever,’ are adverted to as tending to show that at least the specific articles were not included. But these are not words of restriction. They are rather words of-enlargement. The object was to exclude nothing. Such an enumeration, under a videlicit, a much more restrie- *212 tive expression, has been held only a defective enumeration, not a restriction to the specific articles.
The words of the will in the case before us, are, “ I do hereby leave all the rest of my property, that is not above mentioned, such as horses, cattle, hogs, sheep, geese, beds, crop, and other articles too tedious to mention, to be equally divided,” &c. The general term “ property,” has, I am well satisfied, two meanings, one legal and the other popular. Its legal meaning is equivalent to estate, and may include every thing a man is worth : — Its popular meaning* would exclude choses in action, and cash on hand. If there was any thing which showed that the testator used it in its restricted popular sense, it ought to be so restricted in the construction of his will. But it is manifest that he used it in its largest sense, and that he intended it to cover every thing which he had disposed of. The specification made was intended to enlarge, and not to restrict, the words before used.
In the case of Bland v. Lamb, 2 Jac. & Walk. 406, Lord Chancellor Eldon states the rule to be, “ that very special words are required to take a bequest of the residue out of the general rule.”- That was a case of property subsequently and very unexpectedly acquired, by the will and death of the testator’s aunt, who was one of his legatees. At page 404, Lord Chancellor Eldon states the general doctrine applicable to residuary legacies, under such circumstances.
“After the cases which have been referred to, there-can be no doubt that a gift of the residue may have a limited operation, although .the general doctrine of the Court is, that if a person give all the rest cf his personal estate or property, such a gift will not only pass that which he then has, but that which may become his property; and it will operate in this singular way, that although a testator may probably have meant to pass nothing but what he had at the time of his will, (which alone, according to the common sense of the expression, can be called his property) yet if, at the time of his death, he has not a single particle of that property, and has afterwards acquired other property, this last property will pass under the words “ my property. ” The Courts have held, whether on satisfactory grounds or not is another question, that where a person gives all his property, it shows that he did not mean to die intestate as to what he had at the time of making his will; they have inferred that he did not mean to die intestate as to what he should have at the time of his death. This rule has sometimes operated with great hardship, and direc% contrary to the intention of the party, *but notwithstanding that, it has been allowed to prevail.”
From these authorities, it is clear, that in any point of view, the Chancellor’s decree is correct, and ought to be affirmed.
It is accordingly so ordered.
Johnson and Harper, Js., concurred.